## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KEISHA BARNWELL,                          :
                                          :
                                          :
                     Petitioner,          :              Case No.
                                          :
                                          :
          v.                              :
                                          :
                                          :
MAUREEN BAIRD, Warden,                    :
FCI Danbury,                              :
                                          :
HARLEY LAPPIN, Director,                  :
Federal Bureau of Prisons                 :
                                          :
                     Respondents.         :

## PETITION FOR A WRIT OF HABEAS CORPUS

   KEISHA BARNWELL petitions for writ of habeas corpus under 28 U.S.C.

§ 2241, for writ of mandamus under 28 U.S.C. § 1361, and for declaratory judgment

under 18 U.S.C. §§ 2201-2202.  Petitioner, an inmate at the Federal Correctional

Institution at Danbury ("FCI Danbury"), was provided 120 to 150 days for an end-of-

sentence placement in a Residential Reentry Center (RRC) under the Second Chance Act

of 2007 ("the Second Chance Act"), Pub. L. No. 110-119.  In determining the length of

her placement, FCI Danbury's staff did not consider her in good faith, according to

individualized application of the five factors in 18 U.S.C. § 3621(b), for a stay of up to 12

1

months.  They also did not consider her in good faith for a placement length of sufficient duration to maximize her likelihood of successful reintegration into the community, as required by 18 U.S.C. § 3624(c).  Rather, FCI Danbury's staff determined her placement pursuant to an official policy of denying all prisoners placements of over six months except in extraordinary circumstances, a policy which has the effect of denying all or nearly all prisoners placements of over six months.  This policy is outlined in two memoranda issued by the BOP, one issued on April 14, 2008 ("April Memorandum") and one on November 14, 2008 ("November Memorandum"), which restrict RRC placements of over six months to "extraordinary circumstances" and require the Regional Director of the BOP to approve all placements of over six months.  Pursuant to a writ of habeas corpus, KEISHA BARNWELL seeks relief from this violation of her rights such as "law and justice require," 28 U.S.C. § 2243.  She pleads that this Court issue a writ of mandamus requiring respondent HARLEY LAPPIN to rescind the April and November memoranda, and to issue final regulations through notice-and-comment procedures to fulfill the requirements of 18 U.S.C. § 3624(c)(6).  She also pleads that this Court issue a writ of habeas corpus compelling Respondent MAUREEN BAIRD to consider her for an RRC placement under the Second Chance Act without the restrictive placement policy set forth in the April and November memoranda.  She finally pleads that this Court issue a declaratory judgment establishing that the RRC placement policy set forth in the April Memorandum and the November Memorandum is unlawful.

## JURISDICTION

1.     This Court has subject matter jurisdiction for habeas corpus under 28 U.S.C.

§ 2241(c)(1) and (3).  Ms. BARNWELL is in custody both: 1) under or by color

of the authority of the United States; and 2) in violation of the Constitution or

laws of the United States.

2.     This Court has subject matter jurisdiction for mandamus under 5 U.S.C. § 555(b),

5 U.S.C. §§ 701-706, 28 U.S.C. § 1331, 28 U.S.C. § 1361, 28 U.S.C. §§ 2201-

2202, and 8 U.S.C. § 1447(b).

3.     This Court has subject matter jurisdiction for declaratory judgment under 28

U.S.C. §§ 2201-2202 because she has presented an "actual case or controversy,"

and because none of the statutory exceptions apply.

## VENUE

4.     Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §§ 1391(e)

and 2241(a).  Petitioner has been in the custody of the respondents at FCI

Danbury within the jurisdiction of this Court, during the determination of her

RRC placement, and all other events in question.  Respondents' Connecticut-based agents at FCI Danbury have jurisdiction over Petitioner's RRC application.

## **PARTIES**

5.    Petitioner KEISHA BARNWELL is, and was at all times relevant herein, an inmate held in the custody of the Federal Bureau of Prisons ("BOP") at FCI Danbury.  She is in custody under or by color of the authority of the United States within the meaning of 28 U.S.C. § 2241(c)(1).  Her Register Number is 62657-066.

6.    Respondent MAUREEN BAIRD is the Warden at FCI Danbury.  She is the petitioner's custodian and, therefore, the proper respondent under 28 U.S.C. § 2243(¶2).  Respondent is sued exclusively in her official capacity.

7.    Respondent HARLEY LAPPIN is the Director of the Federal Bureau of Prisons. He is the petitioner's custodian, has supervisory control over all personnel at FCI Danbury, is responsible for maintaining the security of the institution, and is responsible for promulgating and enforcing policies regarding RRC determinations under the Second Chance Act and 18 U.S.C. § 3621(b).  He is also responsible for creating regulations under 18 U.S.C. § 3624(c)(6).

## FACTS

### The BOP's Failure to issue the required regulations

8.      The Second Chance Act, as codified at 18 U.S.C. § 3624(c), requires Respondent HARLEY LAPPIN to "issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007." These regulations must establish RRC placement protocols that allow placements of up to 12 months, determined on an individual basis consistent with the five factors listed in 18 U.S.C. 3621(b), and calculated to provide the maximum likelihood of successful reintegration into the community.

9.      On April 14, 2008, Respondent LAPPIN issued the April Memorandum (entitled "Pre-Release Residential Re-Entry Center Placements Following the Second Chance Act of 2007"), establishing that RRC placements of over six months would only be allowed with "extraordinary justification," and that all such placements at a prison would require the approval of the BOP's Regional Director.

10.      On October 21, 2008, 195 days after the enactment of the Second Chance Act, Respondent LAPPIN issued an "Interim rule with request for comment" that purported to fulfill his obligation to issue regulations under 18 U.S.C. § 3624(c). This interim rule went into effect immediately, and did nothing more than repeat the language of the statute.

11.    After releasing this interim rule, Respondent LAPPIN received comments from

many organizations, including Families Against Mandatory Minimums, the

National Association of Criminal Defense Lawyers, the American Bar

Association, Prison Fellowship, the American Legislative Exchange Counsel,

and the Federal Public and Community Defenders.  No response to the public

comments that were submitted has ever been released.

12.    On November 14, 2008, Respondent LAPPIN issued the November

Memorandum, entitled "Inmate Requests for Transfers to Residential

Reentry Centers."  This memorandum reasserted the policy established by

the April Memorandum: that RRC placements of over six months would only

be permitted in extraordinary circumstances, and would require regional

director approval.

13.    Petitioner alleges on information and belief that BOP officials are aware of no

evidence indicating that RRC placements of six months are empirically

superior or more rehabilitative than longer placements.

**Petitioner's History and Reintegration Needs**

14.    Ms. BARNWELL is serving a 36-month sentence for aiding and abetting an

armed bank robbery, and conspiracy to commit armed bank robbery, 18 U.S.C.

§§ 371, 2113(d), imposed on July 23, 2008, by Judge Gene E.K. Pratter in the

Eastern District of Pennsylvania under No. 07-788-3.  Her projected release date,

assuming continued accrual of all available good conduct time, is January 5,

2011.

15.     Ms. BARNWELL cooperated fully with the Federal Bureau of Investigation

while it was investigating her crime, confessing and providing the FBI with phone

records that aided its investigation.  She pled guilty and received credit for

acceptance of responsibility, including a three-point reduction in her sentence.

She did not appeal from the judgment of her conviction.

16.     Ms. BARNWELL received a three-point sentence enhancement because the

robbery was conducted with a weapon.  The weapon used was an unloaded

paintball gun, wielded by one of her codefendants.  Her participation in the

robbery consisted of assisting in its planning and driving one of the cars used to

escape the scene of the crime.

17.     Ms. BARNWELL has committed no disciplinary infractions while in prison, and

has no criminal history prior to the crime for which she is presently incarcerated.

18.     Ms. BARNWELL has contacted employers in order to find work upon her

release, but has had no success.

19.     Prior to her incarceration, Ms. BARNWELL worked as a bank customer service agent and teller.  The nature of her crime will make it impossible for her to find work in a similar field upon release.

20.     Ms. BARNWELL has worked as a unit orderly and in hair care at FCI Danbury, and has completed a blueprints reading course and several Bible correspondence courses.  She has also acted as an instructor for other inmates in a course on how to write a resume.  She has received no other vocational training in prison.

21.     Upon reentry, Ms. BARNWELL has expenses to pay.  She must pay a $1,000 fine and a $200 assessment on her own.  She and her co-defendants must also jointly and severally pay $8,056 in restitution.  To her knowledge, none of the other participants in the crime are able to pay their share of the restitution, except for $75 paid by her husband.  Ms. BARNWELL has paid $25 against her restitution debt every month she has been in prison.  Once released, she must also pay for food and gasoline, vehicle insurance, and other living expenses, as well as RRC housing, which requires an inmate to pay 25% of her income.

22.     Ms. BARNWELL hopes to complete her schooling from an RRC.  Prior to her incarceration, Ms. BARNWELL was a student at West Chester University in Philadelphia, PA.  She presently needs to complete only 3 course credits to graduate, which would take one semester.  Three course credits at West Chester

University for in state students cost a total of $933.54, including tuition and other fees.

23.     Ms. BARNWELL has roughly $35,000 in student loans to repay, including roughly $3,000 in private loans.  These loans have been accruing interest while she has been incarcerated, and the bank has been adding late charges to the private loan.  Ms. BARNWELL's federal Stafford loans are in deferment for economic hardship reasons until August 1, 2010, but the holders of the private loans have demanded payments before they are deferred.  Since finishing her schooling will require incurring loan obligations, Ms. BARNWELL needs to be able to earn money to pay interest on her loans so that she will be creditworthy enough to finish school.

24.     Ms. BARNWELL has located an RRC facility in Philadelphia, named Luzerne, which is ideally located for her to finish her schooling and find employment.  The BOP has given no indication that Luzerne is unable to accommodate her, and Ms. BARNWELL received a letter from Luzerne several months ago indicating that it had space available.  Luzerne provides 8 to 12 week employment training programs, which would allow her to take classes and work.

**Respondent's Placement Determination Process**

25.     From November 2008 to May 2009, Ms. BARNWELL made repeated oral and written requests to the then Warden, Donna ZICKEFOOSE, her Case Manager,

Ms. BASHURA, and her unit manager, Ms. TOLWORTHY, for information about whether she would qualify for placement in a halfway house under the SCA.  These requests were responded to negatively.  She was either ignored or told that she did not qualify for consideration of increased prerelease programming under the Second Chance Act because she had no children and no medical problems, had a family home, had an education, and seemed employable.

26.     On May 18, 2009 Ms. BARNWELL filed an Informal Resolution Form ("BP 8.5") with her Correctional Counselor, Mr. MANCUSO, explaining her attempts to raise the issue of her Second Chance Act placement with Ms. BASHURA and Ms. TOLWORTHY.

27.     On May 19, 2009, Ms. BARNWELL met with Ms. BASHURA and Ms. TOLWORTHY to discuss her placement under the Second Chance Act, and Ms. BARNWELL was informed that she would be recommended for 120 to 150 days in a RRC.

28.     Ms. BARNWELL was given a Residential Re-entry form dated May 19, 2009, that stated she would receive 120 to 150 days in a RRC.  The only factors the form notes are the crime Ms. BARNWELL was convicted of and that fact that she has housing upon release.  This determination was made well after November 14, 2008, when the November Memorandum was issued establishing that RRC

placements of over six months would be limited to "extraordinary circumstances" and would have to be approved by the BOP Regional Director.

29.    On May 22, 2009, Ms. BARNWELL received a written response to her Informal Resolution Form from Mr. MANCUSO, which stated that she would be recommended for up to 120 days in a RRC.

30.    Ms. BARNWELL exhausted the administrative grievance procedure with respect to her request for more time in a RRC under the Second Chance Act.  Her administrative grievance requests were denied at every level.

    a.    On June 5, 2009, petitioner submitted a timely appeal of her Second Chance Act determination to the respondent Warden ("BP 9").  The Warden rejected that appeal on June 17, 2009.

    b.    On June 30, 2009, petitioner submitted a timely appeal of her Second Chance Act determination to the Regional Director of BOP ("BP 10"). The Regional Director rejected that appeal on August 12, 2009.

    c.    On August 17, 2009, petitioner submitted a timely national appeal of her Second Chance Act determination to the Central office of the BOP ("BP 11").  The Central Office responded on November 3, 2009 that her appeal was rejected because she did not submit the proper number of continuation pages, and that she had 15 days to resubmit her appeal.  She received the notice of this rejection in the mail on November 19, 2009, and mailed

another BP 11 on November 25, 2009.  As of March 8, 2010, she had received no word of the status of her final appeal.

    d.  The decision of the Central Office is the final administrative remedy available.  28 C.F.R. § 542.15.

31.    Ms. BARNWELL has been turned down for two transfer requests to the female Work Cadre Unit at the Federal Detention Center, Philadelphia.  This Unit, although nominally "minimum security," operates within an administrative (i.e., maximum) security facility.

32.    Ms. BARNWELL has repeatedly been subject to a "management variable" that prevents her from being housed in the camp at FCI Danbury (or at FDC Philadelphia).  The only factor that has been cited in placing this management variable on her has been the nature of her crime, i.e., that her co-defendant was armed with a paintball gun.  Her disciplinary record in prison has been perfect.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

Rescind the current substantive rule in the April and November memoranda, which violate the Administrative Procedure Act and the Second Chance Act

33.    Petitioner BARNWELL realleges and incorporates by reference each allegation of paragraphs 1-32 above.

34.    Respondent's current RRC placement policy violates the Second Chance Act as codified at 18 U.S.C. § 3624(c) because it prevents BOP officials from providing prisoners with RRC placements of up to twelve months that provide the "greatest likelihood of successful reintegration into the community."  Rather, it limits prisoners' placements to six months

35.    Respondent's current RRC placement policy violates the Sentencing Act as codified at 18 U.S.C. § 3621(b) because it prevents BOP officials from providing prisoners with an individualized placement determination that takes into account the five factors listed in the statute: the resources of the facility contemplated, the nature and circumstances of the offense, the history and characteristics of the prisoner, any statement by the court that imposed the sentence, and any pertinent policy statement issued by the Sentencing Commission.  Rather, the BOP's policy determines placement in an RRC based primarily on an additional factor not mentioned in the statute: the amount of time a prisoner has left on their sentence.

36.    Respondent's current RRC placement policy violates the Administrative Procedure act as codified at 5 U.S.C. § 553 because it was established through two informal, internal memoranda that were not subject to notice-and-comment procedures.  The policy established through the April and November memoranda

constitutes a substantive rule under the APA because it establishes a binding

norm, affects individual prisoner rights to pre-release programming, and cabins

BOP officials' discretion by articulating a generalized standard to apply to all

requests for transfer under the Second Chance Act.

SECOND CLAIM FOR RELIEF

Compel Respondent to issue regulations pursuant to 18 U.S.C. § 3624(c)

37.     Petitioner BARNWELL realleges and incorporates by reference each allegation of

paragraphs 1-32 above.

38.     The "Interim rule with request for comment" promulgated on October 21, 2008,

fails to meet the substantive requirements of the Second Chance Act as codified at

18 U.S.C. § 3624(c), that the BOP issue regulations indicating how it will make

RRC placements under the statute.  The interim rule does not adopt a presumption

of twelve months' pre-release placement, employ the BOP's expertise to elaborate

categories of prisoner that would benefit from more extensive pre-release

placements, create a calculus for weighing different factors like employability,

family needs, or good behavior in determining whether a placement provides the

greatest likelihood of successful reintegration, elaborate how the § 3621(b) factors

will be weighed, or in any other way provide notification or guidance for how the

BOP will exercise its discretion under § 3624(c).  By failing to go beyond the

statutory language, the Interim Rule flatly defies the Congressional mandate to issue interpretive and implementing regulations.

39.    The "Interim rule with request for comment" fails to meet the procedural requirements of the Administrative Procedure Act as codified at 5 U.S.C. § 553 that substantive rules be issued through notice and comment procedures and take effect no less than thirty days after releasing the notice of proposed rulemaking.

40.    Respondent LAPPIN has therefore failed to issue regulations as required by 18 U.S.C. § 3624(c).

THIRD CLAIM FOR RELIEF

Compel Respondent to reconsider Petitioner for a RRC placement without the limitations set forth in the April and November memoranda

41.    Petitioner BARNWELL realleges and incorporates by reference each allegation of paragraphs 1-32 above.

42.    Respondent has not attempted in good faith to provide Petitioner BARNWELL with an individualized placement of up to twelve months, determined with reference to the five factors required by 18 U.S.C. § 3621(b), and of sufficient duration to provide the greatest likelihood of successful reintegration.  Instead, Respondent BAIRD has abused her discretion to give Petitioner BARNWELL a

short RRC placement pursuant to the present, unlawful BOP policy of providing every inmate with no more than six months in a RRC, except in extraordinary circumstances.

For the foregoing reasons, Petitioner respectfully requests that this Court:

a. DIRECT the Respondent pursuant to 28 U.S.C. § 2243(¶2) to show cause within 20 days why the writ should not issue; and then, after such expansion of the record and hearing as may be necessary to determine the facts,

b. GRANT this Petition for writ of habeas corpus, releasing her from respondent's custody unless, within a reasonable period of time determined by the Court, respondent grants her a good faith reconsideration and increased RRC placement in keeping with all applicable provisions of the Second Chance Act,

c. GRANT such other and further relief, pursuant to 28 U.S.C. § 2243(¶8), as law and justice may require,

d. ISSUE a writ of mandamus under the seal of this Court, pursuant to 28 U.S.C. § 1361, commanding that the Respondents issue adequate regulations as commanded by 18 U.S.C. § 3624(c),

e. ISSUE a declaration pursuant to 28 U.S.C. §§ 2201-2202 establishing that the RRC placement policy set forth in the April and November memoranda is unlawful.

I, KEISHA BARNWELL, declare under penalty of perjury that I have read the above and the information contained herein is true and correct.

16

Respectfully submitted,


KEISHA BARNWELL
Petitioner,
Reg. No. 62657-066
FCI Danbury
Route 37
Danbury, CT 06811


BRETT DIGNAM
Attorney,
Legal Services Organization
Yale Law School
P.O. Box 209090
New Haven, CT 06511


ERIC FISH
Legal Intern,
Legal Services Organization
Yale Law School
P.O. Box 209090
New Haven, CT 06511

17